**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**--------------------------------------------------------x**
**DAVID FEYDER REUVENI on behalf of**
**himself and others similarly situated,**

                                                   **CASE NO. 22 CV 10930 (JMF)**

        **Plaintiff,**

          **v.**

**UNAPOLOGETIC FOODS, LLC, ESSEX**
**HOSPITALITY, LLC, d/b/a DHAMAKA**
**RESTAURANT, MASALAWALAPS,**
**LLC, d/b/a MASALAWALA**
**RESTAURANT, THOMSON**
**HOSPITALITY LLC d/b/a ADDA**
**INDIAN CANTEEN, TAPESTRY**
**MANAGEMENT, LLC d/b/a SEMMA**
**SOUTHER INDIAN, THE**
**MASALAWALA LLC, DEBABRATA**
**RONI MAZUMDAR and CHINTAN**
**PANDYA,**

        **Defendants.**
**--------------------------------------------------------x**


### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

D. Maimon Kirschenbaum
Denise A. Schulman
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640

*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 1

   A.   The Lawsuit ........................................................................................................ 1

   B.   Discovery and Settlement Discussions ............................................................... 3

   C.   Settlement Terms ................................................................................................ 4

   D.   Release of Claims .............................................................................................. 5

III.   ARGUMENT ............................................................................................................ 6

   A.   The Proposed Settlement Should Be Approved................................................... 6

     i.   The proposed settlement is fair, reasonable, and adequate and should be approved...... 6

       a.   Procedural fairness .......................................................................................... 7

       b.   Substantive fairness ....................................................................................... 7

         1.   Complexity, expense, and likely duration of the litigation (*Grinnell* factor 1 and Rule 23(e)(2)(C)(i)) ...................................................................................... 8

         2.   Reaction of the class (*Grinnell* factor 2) ................................................... 9

         3.   Stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3) .................................................................................................. 10

         4.   Risks of establishing liability (*Grinnell* factor 4 and Rule 23(e)(2)(C)(i)) ........... 10

         5.   Risks of establishing damages (*Grinnell* factor 5) ................................... 11

         6.   Risks of maintaining the class action through trial (*Grinnell* factor 6 and Rule 23(e)(2)(C)(i)) ...................................................................................... 12

         7.   Ability of Defendants to withstand a greater judgment (*Grinnell* factor 7) ......... 13

         8.   Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation (*Grinnell* factors 8 and 9 and Rule 23(e)(2)(C)(i)) ... 13

         9.   The effectiveness of the proposed method of distributing relief, including the reversion of uncashed checks to Defendants (Rule 23(e)(2)(C)(ii)).................... 14

         10.  The terms of the proposed attorneys' fee award (Rule 23(e)(2)(C)(iii)) .............. 19

         11.  The settlement treats Class Members equitably (Rule 23(e)(2)(D)).................... 19

     ii.  The Notice to Class Members Meets the Requirements of Rule 23 ............................ 23

   B.   Approval Of The Settlement Of The FLSA Claims Is Also Appropriate........................ 23

   C.   The Claims Administrator's Fees Should Be Approved....................................... 24

   D.   Class Counsel's Attorneys' Fees And Costs Should Be Approved ...................... 24

     i.   Class Counsel's Requested Fee Award is Reasonable ................................. 25

       a.   Goldberger factors ....................................................................................... 26

         1.   Counsel's time and labor ......................................................................... 26

2.   The litigation's magnitude and complexity and the risks of litigation ................. 28

3.   Quality of the representation.................................................................... 28

4.   The fee is reasonable in relation to the settlement ................................................ 29

5.   Public policy considerations ......................................................................... 30

IV.  CONCLUSION........................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Manna 2nd Ave. LLC*, No. 15 Civ. 4655,
2017 U.S. Dist. LEXIS 169171 (S.D.N.Y. Oct. 12, 2017) ................................3

*Bannerman v. Air-Sea Packing Group*, No. 18 CV 6146,
2020 U.S. Dist. LEXIS 12868 (S.D.N.Y. Jan. 24, 2020)....................................23,25

*Banyai v. Mazur*, No. 00 Civ. 9806,
0207 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007) ..................................27

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .........................................27

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 CV 4382,
2015 U.S. Dist. LEXIS 90117 (S.D.N.Y. July 9, 2015) .....................................16

*Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595,
2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ...................................13,24

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).....................................6,7,8

*Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 CV 3203,
2018 U.S. Dist. LEXIS 170192 (E.D.N.Y. Sept. 28, 2018)................................27

*D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 CV 3334,
2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023)................................14,27,29

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011).................25

*De Los Santos v. New Food Corp.*, No. 14 CV 4541,
2018 U.S. Dist. LEXIS 32636 (E.D.N.Y. Feb. 28, 2018)...................................16

*Deas v. Alba Carting & Demolition Inc.*, No. 17 CV 3947,
2021 U.S. Dist. LEXIS 38803 (S.D.N.Y. Mar. 2, 2021) ....................................16,22

*Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) .....................................28

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494,
2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. Mar 11, 2015) ...................................29

*Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 CV 7854,
2021 U.S. Dist. LEXIS 27462 (S.D.N.Y. Feb. 12, 2021)....................................14,29

i

*D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787,
   2008 U.S. Dist. LEXIS 96034 (E.D.N.Y. Nov. 25, 2008)..................................12,13

*Emeterio v. A&P Rest. Corp.*, No. 20 CV 970,
   2022 U.S. Dist. LEXIS 14598 (S.D.N.Y. Jan. 26, 2022)...................................13,14,22

*Flores v. Anjost Corp.*, No. 11 Civ. 1531,
   2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 29, 2014)...................................23

*Flores v. CGI Ins.*, No. 22 CV 350,
   2022 U.S. Dist. LEXIS 192572 (S.D.N.Y. Oct. 21, 2022) ...............................7,9,22,23

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2015)..................................21,22

*Gao v. Savour Sichuan Inc.*, No. 19 Civ. 2515,
   2024 U.S. Dist. LEXIS 27444 (S.D.N.Y. Feb. 16, 2024)...................................11

*Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452,
   2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) .................................29

*Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386,
   1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991)...................................12

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)...................................26

*Graham v. Peltz*, 44 F.4th 527 (6th Cir. 2022) ...............................................17

*Guevoura Fund Ltd. v. Sillerman*, No. 15 CV 7192,
   2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) ...............................10

*Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029,
   2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) ...............................29

*Hamadou v. Hess Corp.*, No. 12 Civ. 0250,
   2015 U.S. Dist. LEXIS 79777 (S.D.N.Y. June 18, 2015)...................................23

*Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043,
   2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sept. 22, 2015)..............................*passim*

*Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91 (E.D.N.Y. 2015)..............................15

*Hicks v. Morgan Stanley & Co., Inc.*, No. 01 Civ. 10071,
   2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005)...................................30

*In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389,
   2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015)...................................25

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)..............28,29

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262,
    2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)...................................25

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).......................11,12

*In re Priceline.copm, Inc. Secs. Litig.*, No. 00 Civ. 1884,
    2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007)...................................29

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................6,24

*In re Tenaris S.A. Sec. Litig.*, No. 18 CV 7059,
    2024 U.S. Dist. LEXIS 72980 (E.D.N.Y. Apr. 22, 2024) ..................................7

*Jara v. Felidia Rest.*, No. 17 CV 9622,
    2018 U.S. Dist. LEXIS 241262 (S.D.N.Y. Dec. 17, 2018) ...............................29

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ..........................................................17

*Johnson v. Brennan*, No. 10 Civ. 4712,
    2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)...............................23

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381,
    2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ...................................25

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)....................................................17

*Lipstein v. 20X Hosp. LLC*, No. 22 CV 4812,
    2023 U.S. Dist. LEXIS 167615 (S.D.N.Y. Sept. 19, 2023)...............................11

*Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906,
    2014 U.S. Dist. LEXIS 143165 (S.D.N.Y. Oct. 7, 2014) ..................................16

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................*passim*

*Mba v. World Airways, Inc.*, 369 F. App'x 194 (2d Cir. 2010) ......................................16

*McGreevy v. Life Alert Emergency Response, Inc.*,
    258 F. Supp. 3d 380 (S.D.N.Y. 2017)...............................................................15

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) .........................20

*Monaco v. Historic Old Bermuda Inn, Inc.*, No. 18 Civ. 4101,
    2020 U.S. Dist. LEXIS 267382 (E.D.N.Y. Apr. 3, 2020) .................................16

*Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023) .....................................7,8,19,20

*Murphy v. Lajaunie*, No. 13 CV 6503,
    2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) ...................................28

*Nichols v. Noom, Inc.*, No. 20 CV 3677,
    2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 202) ...................................27

*Park v. FDM Grp., Inc.*, No. 16 CV 1520,
    2021 U.S. Dist. LEXIS 12819 (S.D.N.Y. Jan. 22, 2021)....................................23,25

*Pefanis v. Westway Diner, Inc.*, No. 08 CV 002,
    2010 U.S. Dist. LEXIS 93180 (S.D.N.Y. Sept. 7, 2010)....................................28

*Pickard v. Onsite Facility Servs., LLC*, No. 22 CV 207,
    2023 U.S. Dist. LEXIS 191242 (N.D.N.Y. Oct. 25, 2023) ...............................8,10,14

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ...........................................16,23

*Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 CV 5255,
    2016 U.S. Dist. LEXIS 28266 (E.D.N.Y. Mar. 3, 2016)....................................16,17

*Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017) ...........................3

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011)....................28

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ...........................22

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................25

*Sukhnandan v. Royal Health of Long Island LLC*, No. 12 CV 4216,
    2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) ................................27,29,30

*Taft v. Ackermans*, No. 02 Civ. 7951,
    2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)....................................27,28,30

*Teachers Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814,
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004)....................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .........................6,11,12,25

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693,
    2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ...................................30

**Statutes, Rules, Regulations, and Other Authorities**

2 McLaughlin on Class Actions (8th ed.) .......................................................................15

12 N.Y.C.R.R. § 146-1.3 .................................................................................................2

12 N.Y.C.R.R. § 146-1.4 .................................................................................................2

12 N.Y.C.R.R. § 146-2.2 .................................................................................................2

12 N.Y.C.R.R. § 146-3.4 ..............................................................................................2,11

29 U.S.C. § 202 ...............................................................................................................30

29 U.S.C. § 216 ...............................................................................................................23

Fed. R. Civ. P. 23 ......................................................................................................*passim*

Fed. R. Civ. P. 30 .............................................................................................................3

N.Y. Lab. L. § 195 ..................................................................................................1,3,11,14

N.Y. Lab. L. § 196-d .................................................................................................1,3,19

N.Y. Lab. L. § 650 ...........................................................................................................30

N.Y. Lab. L. § 652 .............................................................................................................1

## I.      INTRODUCTION

Plaintiff respectfully submits this memorandum of law in support of his motion for final approval of the parties' February 2, 2024 Settlement Agreement and Release ("Settlement Agreement" or "Agreement").[1]

## II.     BACKGROUND

### A.  The Lawsuit

Defendants own(ed) and/or operate(d) a number of Indian restaurants in New York City. (Schulman Decl. ¶ 13.)  Plaintiff David Feyder Reuveni worked at two of these restaurants – Dhamaka and Masalawala & Sons – as a server.  (*Id*. at ¶ 14.)  On December 28, 2022, Plaintiff commenced this action on behalf of himself and a putative class of similarly situated service employees, alleging that Defendants (1) did not pay service employees the New York minimum wage for all hours worked, in violation of N.Y. Lab. L. § 652; (2) did not pay service employees the correct overtime rate for overtime hours worked, in violation of the FLSA and New York law; (3) required service employees to share tips with tip ineligible managers, in violation of N.Y. Lab. L. § 196-d; and (4) did not provide service employees with the wage statements and wage notices required under N.Y. Lab. L. § 195.  (*Id*. at ¶ 15.)  On January 10, 2023, Isaac Aaron Estevez, who worked as a bartender at Defendants' Rahi, Semma Southern Indian, and Masalawala & Sons restaurants, joined this action as an Opt-In Plaintiff.  (*Id*. at ¶ 16.)  Plaintiff filed amended complaints on February 7 and June 16, 2023, the latter of which added The Masalawala LLC as a Defendant.  (*Id*. at ¶ 17.)  Pursuant to stipulation, on July 13, 2023 Plaintiff's counsel sent notice of the FLSA claims in this case to all tipped employees who worked at five of Defendants'

---

[1] In support of this motion, Plaintiffs submit the June 11, 2024 declaration of Denise A. Schulman ("Schulman Decl."), and exhibits thereto ("Ex. [number]") and the June 11, 2024 declaration of Jennifer Mills ("Mills Decl.") and exhibits thereto ("Mills Ex. [letter]").

restaurants – Adda Indian Canteen, Dhamaka, Masalawala & Sons, Rahi, and Semma Southern Indian – on or after December 28, 2019. (*Id*. at ¶ 18.) 11 individuals joined the action as Opt-In Plaintiffs in response to that notice. (*Id*.; Dkt. Nos. 44-48, 50, 52-56.)

Plaintiff's minimum wage claim is based on Defendants' use of the tip credit to pay service employees. Plaintiff alleges that Defendants were not entitled to use the tip credit because Defendants (1) did not provide written notice of the tip credit and (2) required service employees to spend at least two hours or 20% of their shifts performing non-tipped work such as cleaning, setting tables, polishing silverware and glassware, and rolling napkins. (Schulman Decl. ¶ 19.) Thus, Plaintiff contends that Defendants' use of the tip credit was unlawful under the relevant regulations. 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2, 146-3.4.

With respect to Plaintiff's overtime claim, he alleges that Defendants were not entitled to use the tip credit overtime rate for the reasons discussed *supra*. Moreover, Plaintiff contends that even if Defendants were entitled to use the tip credit, they did not pay service employees the proper overtime rate until approximately December 2022. The tip credit overtime rate is calculated by multiplying the full minimum wage by 1.5 and then subtracting the tip credit. 12 N.Y.C.R.R. § 146-1.4. Thus, for an employee paid a $10 tip credit rate when the full minimum wage was $15, the tip credit overtime rate was $17.50 ($15 * 1.5 = $22.50 - $5 tip credit = $17.50). However, until approximately December 2022, Defendants paid Class Members an overtime rate of 1.5 times the tip credit minimum wage. For example, an employee paid a $10 tip credit rate was paid an overtime rate of $15 rather than $17.50. (Schulman Decl. ¶ 20.) In addition, although some service employees worked at more than one restaurant, Defendants did not aggregate their hours across restaurants for the purpose of calculating overtime hours for those employees. Plaintiff maintains that the Restaurants constitute a single integrated employer, and therefore Defendants were

obligated to aggregate hours for overtime purposes.  (*Id.* at ¶ 21.)  *See, e.g.*, *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017); *Acosta v. Manna 2nd Ave. LLC*, No. 15 Civ. 4655, 2017 U.S. Dist. LEXIS 169171, at *3 (S.D.N.Y. Oct. 12, 2017).

Plaintiff also contends that the tip pools at Dhamaka, Rahi, and Semma Southern Indian restaurants violated N.Y. Lab. L. § 196-d because they included managers who had, *inter alia*, hiring, firing, and scheduling authority.  (Schulman Decl. ¶ 22.)  Finally, Plaintiff alleges that Defendants (1) either failed entirely to provide the wage notices required under N.Y. Lab. L. § 195(1) or provided deficient notices; and (2) violated N.Y. Lab. L. § 195(3) by failing to accurately identify the tip credit taken on employees' wage statements.  (*Id.* at ¶ 23.)

Defendants deny all of Plaintiff's allegations and maintain that they paid employees properly in compliance with applicable law.  Defendants further deny that the case can appropriately be maintained as a class or collective action on any of the claims asserted by Plaintiff.

### B.  Discovery and Settlement Discussions

The parties engaged in substantial discovery prior to reaching a settlement.  Following extensive discovery disputes and pursuant to Court Order, Defendants produced all putative Class Members' time records, payroll records, wage notices, wage statements, and tip sheets in their possession.  (*Id.* at ¶ 24.)  The Named Plaintiff and 11 Opt-In Plaintiffs also responded to Defendants' written discovery requests and, if applicable, produced responsive documents.[2]  (*Id.* at ¶ 27.)  Plaintiff took four depositions, which included Fed. R. Civ. P. 30(b)(6) depositions of each Corporate Defendant and depositions of the two Individual Defendants.  (*Id.* at ¶ 26.)

On January 22, 2024 the parties attended a private mediation with mediator Martin Scheinman.  (*Id.* at ¶ 28.)  At the mediation, the parties agreed to settle this case for $1,500,000.00.

---

[2] Defendants did not serve discovery requests on one of the Opt-In Plaintiffs.  (Schulman Decl. ¶ 27.)

(*Id*. at ¶ 29.)  Plaintiff believes this settlement amount is highly favorable to the Class in light of their risks in this litigation.  (*Id*. at ¶ 30.)

### C.  Settlement Terms

The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of $1,500,000.00 (the "Settlement Payment").  (Ex. 1 ¶¶ 1.19, 3.1(A).)  The Settlement Payment includes payments to Class Members, attorneys' fees and costs, service awards to the Plaintiffs who participated in discovery, and settlement administration costs.  (*Id*. at ¶¶ 3.1(A), 3.2, 3.3, 3.4.)

The Net Settlement Fund ("NSF") is the remainder of the Settlement Payment after deductions for Court-approved attorneys' fees and costs, Court-approved service awards, settlement administration costs, and any other costs, expenses, fees, or other distributions (other than payments to Class Members) associated with the settlement.  (*Id*. at ¶ 1.20.)  Plaintiff's counsel will seek recovery of their litigation costs and attorneys' fees of no more than one-third of the Settlement Payment.  (*Id*. at ¶ 3.2.)

The NSF shall be distributed among Class Members who worked at Adda Indian Canteen, Dhamaka, Masalawala & Sons, Rahi, Semma Southern Indian, and The Masalawala (collectively, the "Restaurants") in Covered Positions between December 28, 2016 and January 22, 2024.  (*Id*. at ¶¶ 1.7, 1.17, 1.22, 3.4.)  The NSF will be divided into three sub-funds: Rahi/Semma Tip Disgorgement Fund (8.7% of the NSF), Dhamaka Tip Disgorgement Fund (3.89% of the NSF), and Non-Tip Claim Fund (87.41% of the NSF).  (*Id*. at ¶ 3.4(B)(3).)  The Rahi/Semma Tip Disgorgement Fund will be allocated to Class Members who worked at Rahi and Semma Southern Indian on a *pro rata* basis according to each Class Member's tips received in a Covered Position from those restaurants between December 28, 2016 and October 31, 2022.  The Dhamaka Tip

Disgorgement Fund will be allocated to Class Members who worked at Dhamaka on a *pro rata* basis according to each Class Member's tips received in a Covered Position from Dhamaka between December 28, 2016 and December 31, 2022. Three Class Members who Plaintiff contends were improperly included in the Rahi and Semma tip pools will not receive payment from the Rahi/Semma Tip Disgorgement Fund, and one Class Member who Plaintiff contends was improperly included in the Dhamaka tip pool will not receive payment from the Dhamaka Tip Disgorgement Fund. The Non-Tip Claim Fund will be allocated to all Class Members on a *pro rata* basis according to their hours worked in Covered Positions at all of the Restaurants between December 28, 2016 and January 22, 2024. (*Id*. at ¶ 3.4(B).) Notwithstanding this formula, no Class Member will be awarded a settlement share that is less than $150. (*Id*. at ¶ 3.4(B)(2).) Settlement payments will be sent to all Class Members who have not timely opted out of the Class without having to submit claim forms. (*Id*. at ¶¶ 2.6, 3.4(F).)

Defendants will fund the settlement over 25 months, starting with a $500,000 payment in July 2024 and then making 24 subsequent equal monthly payments. (*Id*. at ¶ 3.1(B).) There will be three distributions of settlement checks to Class Members in (1) the later of August 2024 or 35 days after final approval of the settlement; (2) August 2025; and (3) August 2026. (*Id*. at ¶ 3.4(E).) Settlement checks will be valid for 90 days. Class Members can request new Settlement Checks up to 180 days from when the third distribution of Settlement Checks is made. (*Id.* at ¶ 3.4(G).) Any money still remaining in the Settlement Fund on the later of one hundred eighty-one (181) days after the third distribution Settlement Checks are issued or fifty (50) days after the last reissued settlement check is issued shall revert back to Defendants. (*Id*. at ¶ 3.4(H).)

### D. Release of Claims

In return for the above consideration, all Class Members who do not opt out of the Class

will release all wage and hour claims for time worked in Covered Positions against Defendants under state law.  (*Id.* at ¶ 4.1.)  All Class Members who cash their settlement checks will release all FLSA claims for time worked in Covered Positions against Defendants.  (*Id.* at ¶ 4.2.)

## III.    ARGUMENT

### A.  The Proposed Settlement Should Be Approved

Fed. R. Civ. P. 23(e) ("Rule 23") requires judicial approval of any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted).  "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet . . . it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

### i.  The proposed settlement is fair, reasonable, and adequate and should be approved

In order to approve a class action settlement, courts must determine whether the settlement fair, reasonable, and adequate based on the negotiating process and the substantive terms of the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  In doing so, courts must consider the factors set forth in Rule 23(e)(2), specifically, whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i)   the costs, risks, and delay of trial and appeal;
    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of
           payment; and
      (iv)  any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

### a.  Procedural fairness

The factors relevant to the procedural fairness of a settlement are whether the class

representative and class counsel have adequately represented the class and the settlement was

negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(A), (B); *Moses v. N.Y. Times Co*., 79 F.4th

235, 243 (2d Cir. 2023).  Both of these factors are satisfied here.

As set forth in Plaintiff's preliminary approval motion, Class Representative David

Reuveni has fairly and adequately protected the interests of all Class Members throughout this

litigation, and he has no known conflicts with Class Members.  No Class Member has objected to

Reuveni's role as Class Representative.  (Mills Decl. ¶ 17.)  Similarly, Class Counsel are highly

experienced in class action wage and hour litigation and have vigorously litigated this hard-fought

action, ultimately securing an excellent result for the Class.  (Schulman Decl. ¶¶ 48-54, 60-62; *see*

*also infra* at 28-29.)  Thus, Rule 23(e)(2)(A) is satisfied.  *See In re Tenaris S.A. Sec. Litig.*, No. 18

CV 7059, 2024 U.S. Dist. LEXIS 72980, at *15-17 (E.D.N.Y. Apr. 22, 2024).

Finally, the settlement was negotiated at arm's length with the assistance of an experienced

employment law mediator and following extensive discovery that enabled Plaintiff to evaluate

both the strength and value of the Class's claims.  (Schulman Decl. ¶¶ 24-28.)  Accordingly, the

settlement is procedurally fair.  *Flores v. CGI Inc.*, No. 22 CV 350, 2022 U.S. Dist. LEXIS 192572,

at *16-18 (S.D.N.Y. Oct. 21, 2022).

### b.  Substantive fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness

according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463; *Moses*, 79 F.4th at 242-43.  Rather than applying these factors formulaically, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell*, 495 F.2d at 468.  Courts must also consider the Rule 23(e)(2)(C), (D) factors, many of which overlap with the *Grinnell* factors.  *Moses*, 79 F.4th at 243, 244.

### 1. Complexity, expense, and likely duration of the litigation (*Grinnell* factor 1 and Rule 23(e)(2)(C)(i))

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation.  *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002).  "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Pickard v. Onsite Facility Servs., LLC*, No. 22 CV 207, 2023 U.S. Dist. LEXIS 191242, at *16 (N.D.N.Y. Oct. 25, 2023) (internal quotation omitted).  This case is no exception.  There are 270 Class Members (*see* Mills Decl. ¶¶ 10, 12), claims have been brought under federal and state statutes, and there are numerous disputed factual and legal issues.  Moreover, Class Members worked at multiple restaurants that maintained different practices.  For example, not all restaurants included in the tip pool individuals who Plaintiff contends were managers, and the question of whether the alleged managers were eligible to participate in the tip pools is fact intensive. (Schulman Decl. ¶ 34.)  The question of whether Class Members spent more than two hours or

20% of their shifts performing non-tipped work could both vary by restaurant and involve individualized questions particular to specific Class Members. There are also variations among the restaurants as to if and when they provided wage notices to employees and the types of wage notices they provided. (*Id.*)

Further litigation without settlement would necessarily result in additional expense and delay. Completing discovery and motion practice – including Rule 23 class certification, FLSA collective decertification, and summary judgment– would be time consuming and expensive for both sides. Preparing and putting on evidence on the complex factual and legal issues at trial would also consume a great deal of time and resources for both sides, as well as require substantial judicial resources to adjudicate the parties' disputes. Any judgment would likely be appealed, thereby extending the duration of the litigation and depleting any possible recovery. This Settlement, on the other hand, makes monetary relief available to Rule 23 Class Members in a prompt and efficient manner. Therefore, these factors weigh in favor of final approval.

### 2. Reaction of the class (*Grinnell* factor 2)

The positive reaction of the Class Members overwhelmingly supports approval of the settlement. In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that object to and opt out of the settlement. Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *Flores*, 2022 U.S. Dist. LEXIS 192572, at *19-20.

Claims Administrator Rust Consulting mailed the Class Notice to 243 Class Members on March 18, 2024. (Mills Decl. ¶ 10.) The deadline for these Class Members to opt out and/or object to the settlement was May 17, 2024. (*Id.*) After this initial mailing, the parties identified 27 additional Class Members who were inadvertently not included in the Class List Defendants

provided to the Claims Administrator.  The Claims Administrator sent the Class Notice to these individuals on May 13, 2024, and the opt out/objection deadline for these 27 Class Members is June 12, 2024.  (*Id.* at ¶¶ 11-12.)  As of this writing, one Class Member has opted out of the settlement, and none have objected.[3]  (*Id.* at ¶¶ 16-17.)  Thus, Class Members' satisfaction with the settlement is clear.

### 3. Stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3)

Courts consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement.  *Pickard*, 2023 U.S. Dist. LEXIS 191242, at *17.  Courts look at whether "counsel 'possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.'"  *Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043, 2015 U.S. Dist. LEXIS 126934, at *28 (S.D.N.Y. Sept. 22, 2015).  Class Counsel entered into the proposed Settlement Agreement after taking full discovery from Defendants, which allowed them to evaluate the strengths, weaknesses, and value of the claims.  (Schulman Decl. ¶¶ 24-26.)  Accordingly, this factor weighs in favor of approving the settlement.

### 4. Risks of establishing liability (*Grinnell* factor 4 and Rule 23(e)(2)(C)(i))

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the certainty of recovery, against the continuing risks of litigation."  *Guevoura Fund Ltd. v. Sillerman*, No. 15 CV 7192, 2019 U.S. Dist. LEXIS 218116, at *23 (S.D.N.Y. Dec. 18, 2019).  Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure

---

[3] If any opt outs or objections are received after this filing, the parties will advise the Court at the fairness hearing.

thing[.]"  *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

Defendants have asserted multiple factual and legal defenses to Plaintiff's claims.  The parties dispute whether and when Defendants provided Class Members with adequate notice of the tip credit, whether Defendants constitute a single employer such that Class Members should have been paid overtime based on their hours worked across all restaurants, whether certain individuals included in the tip pools at Rahi, Semma, and Dhamaka were managers, and whether Class Members spent more than two hours or 20% of a shift performing non-tipped work, such that they should not have been paid pursuant to a tip credit under 12 N.Y.C.R.R. § 146-3.4.  Many of the facts underlying the single employer, tip pool, and 80/20 disputes would have to be determined based on testimony rather than documents, heightening the risk of establishing liability.

If litigation continued, Defendants would also likely challenge Plaintiff's N.Y. Lab. L. § 195 claims on standing grounds.  *See Lipstein v. 20X Hosp. LLC*, No. 22 CV 4812, 2023 U.S. Dist. LEXIS 167615, at *22-24 (S.D.N.Y. Sept. 19, 2023) (collecting cases addressing standing for NYLL § 195 claims).  While Plaintiff believes he has standing, many courts in this Circuit have rejected similar claims for lack of standing in the last several years.  *See Gao v. Savour Sichuan Inc.*, No. 19 Civ. 2515, 2024 U.S. Dist. LEXIS 27444, at *75 (S.D.N.Y. Feb. 16, 2024) (collecting cases).  Finally, Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed Settlement alleviates this uncertainty, and is therefore preferable to trial, which may result in a smaller per-plaintiff recovery.

### 5.  Risks of establishing damages (*Grinnell* factor 5)

Courts also consider the risks of establishing damages.  Regardless of Plaintiff's ability to establish liability, he would still face "risks in proving [their] damages at trial."  *In re Painewebber*

*Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119.  While damages would be calculated primarily based on Defendants' documents, there are gaps in these documents, particularly time records and tip sheets, and "damages are a matter for the jury, whose determinations can never be predicted with certainty."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

### 6.  Risks of maintaining the class action through trial (*Grinnell* factor 6 and Rule 23(e)(2)(C)(i))

The next *Grinnell* factor is the risk of maintaining the class action through trial.  Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified.  *D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991).  Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class.  *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18.  Here, no class has yet been certified, and Defendants would oppose certification.  Defendants would also move to decertify the collective based on what they contend are the differences between Opt-In Plaintiffs' experiences working at each of the restaurants and different practices in place at each restaurant.  Because there are no Opt-In Plaintiffs who worked at Adda or The Masalawala, on a contested motion Plaintiff would not have a proposed class representative from those restaurants.  (Schulman Decl. ¶ 18.)  Thus, in addition to their other arguments, Defendants would likely argue that this would preclude including employees from those restaurants in the Class.  Accordingly, this factor weighs in favor of approval.

### 7. Ability of Defendants to withstand a greater judgment (*Grinnell* factor 7)

Courts consider a defendant's ability to withstand a judgment greater than the settlement. *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57. While Plaintiff is not fully aware of Defendants' financial condition, Defendants represented that paying a settlement of this side is a financial hardship, as reflected in the 25-month payment period. The Restaurants are also small, with 20 or fewer tables each, and The Masalawala closed in 2021. (Schulman Decl. ¶ 36.) Accordingly, this factor weighs in favor of approving the settlement. *See Emeterio v. A&P Rest. Corp.*, No. 20 CV 970, 2022 U.S. Dist. LEXIS 14598, at *24-25 (S.D.N.Y. Jan. 26, 2022).

### 8. Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation (*Grinnell* factors 8 and 9 and Rule 23(e)(2)(C)(i))

"The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Hart*, 2015 U.S. Dist. LEXIS 126934, at *31. The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365. These factors weigh strongly in favor of approval of the Settlement.

> [T]here is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.

*Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595, 2012 U.S. Dist. LEXIS 144651, at *18 (S.D.N.Y. Oct. 5, 2012) (internal quotation marks omitted). While Plaintiff believes Class Members' maximum possible damages total approximately $5.35 million, penalties for violations of N.Y.

Lab. L. § 195(1) and (3) account for roughly $772,300 and $1.007 million, respectively, and liquidated damages total approximately $1.784 million. (Schulman Decl. ¶ 16.) Class Members' maximum out of pocket loss – including compensatory damages for the unpaid tip credit, unpaid overtime premium, and misappropriated tips – totals roughly $1.784 million, approximately $1.409 million of which is unpaid tip credit damages. (*Id*.) Thus, the settlement is roughly 84% of Class Members' maximum unpaid wages.

While there is a possibility that the Class may be awarded more money after trial (and appeal), in light of the risks of the case and Defendants' likely inability to withstand a greater judgment as described *supra*, the Settlement provides the significant benefit of a guaranteed and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road" or, worse, a larger judgment which the Class is unable to collect. *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004); *see also Pickard*, 2023 U.S. Dist. LEXIS 191242, at *21 (approving settlement equal to 16% of maximum unpaid wages); *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 CV 3334, 2023 U.S. Dist. LEXIS 131029, at *18-19 (E.D.N.Y. July 28, 2023) (approving settlement that was 5% of best possible recovery); *Emeterio*, 2022 U.S. Dist. LEXIS 14598, at *23-24 (approving settlement that was 25% of best possible recovery); *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 CV 7854, 2021 U.S. Dist. LEXIS 27462, at *14 (S.D.N.Y. Feb. 12, 2021) (approving settlement that was 28% of best possible recovery).

> **9.** **The effectiveness of the proposed method of distributing relief, including the reversion of uncashed checks to Defendants (Rule 23(e)(2)(C)(ii))**

The method of distributing relief is effective and fair. Checks will be mailed to all Class Members in three annual installments without Class Members having to submit claim forms. (Ex.

1 ¶ 3.4(E).)  Class Members may request reissued settlement checks up to 180 days after the third

installment checks are mailed, and the Notice distributed to Class Members explained to them how

to update their addresses between installments if needed.  (*Id*. at ¶ 3.4(G).)  This leaves ample time

(two and a half years from when the first installment checks are mailed) for any Class Members

who do not receive their checks (due to, for example, a change in address or USPS issue) to claim

their checks.  Mailing checks to all Class Members is self-evidently a highly effective method of

distributing relief and thus satisfies Rule 23(e)(2)(C)(ii).

The reversion of settlement funds from uncashed checks to Defendants is also fair and

reasonable and should be approved.  The public policy concerns that exist in reversionary claims

made settlements are not present here, where settlement checks will be mailed to all Class

Members without Class Members having to take any affirmative action.  Specifically, because

claims made settlements typically have a low participation rate, *see Hernandez v. Immortal Rise,*

*Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (noting that a 20% claims rate "is well above average in

class action settlements" and quoting 2 McLaughlin on Class Actions § 6:24 (8th ed.) for the

proposition that "[c]laims-made settlements typically have a participation rate in the 10-15 percent

range"), courts are often concerned that  the overall maximum settlement amount is a fiction being

used to justify a high attorneys' fee award.  *See McGreevy v. Life Alert Emergency Response, Inc.*,

258 F. Supp. 3d 380, 387-88 (S.D.N.Y. 2017).  Here, in contrast, Class Counsel expect that the

vast majority of Class Members will cash their checks.  In fact, some courts that have taken issue

with claims made reversionary settlements have noted that distributing checks to all class members

without the need to submit claim forms, as in this settlement, is a positive alternative to claims

made reversionary settlements.  *E.g.*, *id*.

Even in the context of claims made settlements, the Second Circuit "has held that

unclaimed portions of a class action fund in a private action may properly be returned to the defendant." *Mba v. World Airways, Inc.*, 369 F. App'x 194, 197 (2d Cir. 2010). Consistent with this, District Courts in this Circuit routinely approve the reversion of such funds to Defendants in wage and hour actions, both in non-claims made settlements like this one and claims made settlements. *E.g.*, *Deas v. Alba Carting & Demolition Inc.*, No. 17 CV 3947, 2021 U.S. Dist. LEXIS 38803, at *10 (S.D.N.Y. Mar. 2, 2021) (claims made); *Argudo v. Parea Group LLC*, No. 18 CV 678 (S.D.N.Y. Jan. 29, 2021) (Furman, J.) (Ex. 3) (claims made); *Monaco v. Historic Old Bermuda Inn, Inc.*, No. 18 Civ. 4101, 2020 U.S. Dist. LEXIS 267382, at *5 (E.D.N.Y. Apr. 3, 2020) (claims made); *De Los Santos v. New Food Corp.*, No. 14 CV 4541, 2018 U.S. Dist. LEXIS 32636, at *8 (E.D.N.Y. Feb. 28, 2018) (non-claims made); *Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10 CV 5255, 2016 U.S. Dist. LEXIS 28266, at *8-9, *20 (E.D.N.Y. Mar. 3, 2016) (claims made); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 CV 4382, 2015 U.S. Dist. LEXIS 90117 (S.D.N.Y. July 9, 2015) (claims made); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 216 (S.D.N.Y. 2015) (claims made); *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 U.S. Dist. LEXIS 143165, at *6 (S.D.N.Y. Oct. 7, 2014) (non-claims made); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240 at 33:20-24, 34:13-17 (S.D.N.Y. Sept. 14, 2012) (Ex. 4) (in non-claims made settlement, rejecting objection to reversion provision).

The structure of this settlement – non-claims made but with a reversion of uncashed checks – is designed to maximize (1) the number of Class Members who receive payment and (2) the amount available to each Class Member. As other courts have recognized in the context of claims made settlements, without a reversionary provision Defendants may not have agreed to as large a settlement, which could have ultimately left Class Members who redeem their settlement checks with less money than they will receive under this Settlement. *Hart*, 2015 U.S. Dist. LEXIS

126934, at *46-47 ("[T]he Court is mindful that the reversion feature was part of an integrated settlement.  The settlement alternative to it, if any, would have been a smaller settlement without a reversion feature.  Such a settlement would not necessarily have done any more for the class."); *see also Rosario*, 2016 U.S. Dist. LEXIS 28266, at *20.

A court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components[,]" and "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012); *see also Joel A. v. Giuliani*, 218 F.3d 132, 144 (2d Cir. 2000) ("[A] settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair."); *Graham v. Peltz*, 44 F.4th 527, 537 (6th Cir. 2022) ("[T]he district court was tasked with deciding not whether the proposed settlement was the best one imaginable but only whether it was fair and adequate under the relevant circumstances.").  As discussed above, this settlement was the result of arm's-length, non-collusive negotiations and provides an excellent recovery for the Class in light of the value of their claims, the risks in prevailing on their claims, and potential collections issues if the case proceeded to judgment.  Viewing the settlement as a whole, it is a very good outcome for the Class, and the reversion provision does not undo the overall fairness of the settlement.  Put simply, because the overall settlement amount and Class Members' individual awards under the settlement allocation formula are fair and reasonable, the fact that some Class Members would receive larger awards if the case had settled for the same amount without a reversion does not make the settlement unfair or unreasonable.

*Hart v. RCI Hosp. Holdings*, is particularly instructive.  In *Hart*, a subset of the class had to submit verification forms in order to receive payment, while settlement checks were to be

automatically mailed to the remainder of the class.  2015 U.S. Dist. LEXIS 126934, at *14-15.

Following the bar date, 73.2% of the net settlement fund was going to be distributed to the class.

*Id*. at *24-25.  However, due to, among other things, the transient nature of the class, the parties

anticipated that a significant portion of the checks would not be cashed.  *Id*. at *25 n.9, *45 n.11.

The uncashed portion of the NSF would be returned to the defendants.  *Id*. at *34-35.

Judge Engelmayer explicitly considered whether the reversion of the unclaimed portion of

the NSF was reasonable and concluded that it was:

> From the perspective of the participating class members, [Defendants'] payout is
> substantial, horizontally equitable among the class, and likely to be experienced as
> 'found money.'  Defendants, for their part, exposed themselves to the duty to pay a
> full $15 million, with no assurance that a significant minority of class members
> would not collect. . . . Absent the reversion feature, the Club's counsel represented,
> defendants would not have agreed to a $15 million settlement.

*Id*. at *35-36.  As in *Hart*, here the overall settlement amount and method of allocation are fair as

discussed *supra* and *infra*, and Defendants took on the obligation of paying $1.5 million without

any assurance that there would be unclaimed funds to revert to them.  Unlike in *Hart*, where all

parties estimated at the time of settlement that roughly 40% of the NSF would revert to Defendants,

Class Counsel here have never expected a high amount of uncashed settlement funds.  (Schulman

Decl. ¶ 37.)  During the notice period, a number of Class Members who did not receive notice

contacted Class Counsel to update their addresses, indicating a "word of mouth" effect about the

settlement that will help to locate Class Members who may have moved.  (*Id*. at ¶ 38.)  Moreover,

Class Members who do not receive their settlement checks can request reissued checks up to 180

days after the third installment checks are mailed, resulting in a two and a half year period for

Class Members to claim their checks if they do not receive them.  (Ex. 1 ¶ 3.4(G).)  Defendants

have also provided Class Counsel with the phone numbers of the vast majority of Class Members,

which will enable Class Counsel to conduct outreach to Class Members who do not cash their

checks.  (Schulman Decl. ¶ 39.)  Based on the foregoing, Plaintiff believes the reversion of unclaimed funds is fair and reasonable.  However, if the Court would deny approval of the Settlement based on the reversion provision, Plaintiff would agree to a *pro rata* distribution of unclaimed funds to Class Members who cash their checks, provided the Claims Administrator deems it feasible to do so in light of the administration costs associated with an additional mailing and the dollar amounts of the checks that would be sent to Class Members.

### 10. The terms of the proposed attorneys' fee award (Rule 23(e)(2)(C)(iii))

The terms of the proposed award of attorneys' fees, including timing of payment, are reasonable.  As discussed below, Class Counsel seeks a fee of $500,000, or one-third of the settlement.  This is in line with the percentage awards approved in this Circuit and is reasonable in light of, *inter alia*, Class Counsel's time and labor, the quality of the representation, and the magnitude, complexities, and risks of the litigation.  *See infra* at 25-26, 29.  Attorneys' fees will be distributed on the same schedule as Class Members' awards, and thus attorneys' fees are not privileged over Class Members' payments.  (Ex. 1 ¶ 3.4(E).)

### 11. The settlement treats Class Members equitably (Rule 23(e)(2)(D))

Under Rule 23(e)(2)(D), a court must consider whether the allocation of the settlement among class members, including any service awards, is fair.  *Moses*, 79 F.4th at 253.  The Settlement's NSF allocation formula applies to all Class Members and is fair.  The NSF is first split into three separate pools – tip disgorgement funds for Rahi/Semma and Dhamaka, and the remainder of the NSF.  (Ex. 1 ¶ 3.4(B)(3).)  The percentages allocated to the two tip disgorgement funds correspond to the share of the total Classwide damages (compensatory and liquidated damages) attributed to the N.Y. Lab. L. § 196-d claims for the respective restaurants.  (Schulman

Decl. ¶ 33.)  Each tip disgorgement fund is distributed on a *pro rata* basis based on Class Members'

tips received at the respective restaurants, which fairly approximates each person's potential harm

as a result of the allegedly unlawful tip pool practices.  (Ex. 1 ¶ 3.4(B)(3).)  The remainder of the

NSF is allocated based on hours worked, which is a reasonable method of allocation given that

Class Members' tip credit and overtime damages accrued on a hourly basis.  *See Meredith Corp.*

*v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[A]n allocation formula need only

have a reasonable, rational basis, particularly if recommended by experienced and competent class

counsel.") (internal quotation marks omitted).

The requested service awards are also fair and equitable.  Under the proposed Settlement

Agreement, and subject to the Court's approval, separate payments of $10,000 to Named Plaintiff

David Feyder Reuveni; $2,500 to each of Opt-In Plaintiffs Zachary Abercombie, Isaac Aaron

Estevez, Jacqueline Gil, and Sydney Williams, all of whom completed paper discovery and agreed

to provide declarations in support of class certification and spoke with Class Counsel about the

content of those declarations; and $1,000 to each of Opt-In Plaintiffs Lupe Alexandra Avila,

Jonathan Castro, Aawa Ebret, Jaime Figueroa, P.V. Kumar Ganapathy, Artemio Lopez, and Alaska

Stewart, all of whom completed paper discovery (the Named and Opt-In Plaintiffs identified above

are referred to collectively as the "Service Award Plaintiffs").  (Ex. 1 ¶ 3.3.)  The 12 service awards

total $27,000.  The Second Circuit recently affirmed that service awards are permissible in class

action settlements.  *Moses*, 79 F.4th at 245, 253-56.  In fact,

> the equitable-treatment requirement protects the interests of class representatives
> who play an active role in the litigation – often providing the background
> information that forms the basis of the lawsuit, engaging in fact discovery, and
> devoting considerable time and effort into the settlement process – "from having
> absent class members free ride on their efforts."

*Id*. at 245.  Service awards "are particularly appropriate in the employment context. . . . [where]

the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

The Service Award Plaintiffs expended considerable time and effort to assist Class Counsel with the case. (Schulman Decl. ¶¶ 40-44.) Reuveni initiated this action, remained in regular communication with Class Counsel throughout the litigation, and brought Estevez into the case shortly after it began. (*Id.* at ¶ 40.) Estevez worked at two restaurants – Rahi and Semma – where Reuveni did not work and provided specific information about those restaurants that Plaintiff included in the First Amended Complaint, including identifying alleged managers who were included in the Rahi and Semma tip pools. Thus, Estevez was responsible for the assertion of N.Y. Lab. L. § 196-d claims on behalf of Rahi and Semma employees. (*Id.* at ¶ 41.) Estevez also agreed to become a Named Plaintiff if needed when Plaintiff submitted a proposed Third Amended Complaint in response to Defendants' motion for judgment on the pleadings. (*Id.*)

All of the Service Award Plaintiffs completed written discovery, meeting with Class Counsel to do so and producing responsive documents if they had any, and explained relevant and necessary factual information to Class Counsel. (*Id.* at ¶ 43.) Reuveni and Estevez were both prepared to sign declarations in support of an FLSA conditional certification motion when it seemed unlikely that the parties would be able to stipulate to notice. (*Id.* at ¶ 42.) Reuveni, Estevez, Abercrombie, Gil, and Williams all agreed to sign declarations in support of a motion for class certification and spoke with Class Counsel separately to provide information for those declarations. (*Id.* at ¶ 44.) Thus, the Service Award Plaintiffs' assistance was crucial in the prosecution and proposed resolution of the case.

The Service Award Plaintiffs also assumed significant risks in prosecuting this action. In

the employment context, where workers can be considered "troublemakers," individuals who take a leading role in litigation can be particularly vulnerable to retaliation. *E.g.*, *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less others be dissuaded."). This risk was particularly high for Opt-In Plaintiff Abercrombie, who joined this action while he was still employed by Defendants. (Schulman Decl. ¶ 45.) In addition, this lawsuit is the first result in a Google search of the Named Plaintiff's full name (David Feyder Reuveni) and the fourth result in a Google search of Opt-In Plaintiff Isaac Aaron Estevez' full name, which has the potential to harm them in future job searches. (*Id.* at ¶ 46; Exs. 5, 6.) *See Flores*, 2022 U.S. Dist. LEXIS 192572, at *30-31. Even where, as here, there is no record of any actual retaliation, service fees are appropriate in recognition of the risk of retaliation assumed by lead plaintiffs for the benefit of absent class members. *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action . . . , the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded."). To be sure, during the FLSA opt-in period, at least two people expressed to Class Counsel that they were afraid of the consequences of joining the action, and they ultimately decided not to opt-in. (Schulman Decl. ¶ 47.) By participating in this action when others were too afraid to do so, the Service Award Plaintiffs facilitated a settlement that will benefit all Class Members.

The 12 service awards, totaling $27,000, are reasonable in comparison with those approved by other courts, and they represent just 1.8% of the Settlement Fund. *See*, *e.g.*, *Emeterio*, 2022 U.S. Dist. LEXIS 14598, at *31 (approving five service awards totaling $30,000 from $450,000 settlement); *Deas*, 2021 U.S. Dist. LEXIS 38803, at *9-10 (approving nine service awards ranging

from $5,000 to $15,000 and totaling $65,000 from $1.5 million settlement); *Park v. FDM Grp., Inc.*, No. 16 CV 1520, 2021 U.S. Dist. LEXIS 12819 (S.D.N.Y. Jan. 22, 2021) (awarding 21 service awards ranging from $1,500 to $20,000 and totaling $58,500 out of $4.135 million settlement); *Bannerman v. Air-Sea Packing Group*, No. 18 CV 6146, 2020 U.S. Dist. LEXIS 12868, at *4 (S.D.N.Y. Jan. 24, 2020) (awarding two service awards totaling $20,000 from $548,400 settlement); *Raniere*, 310 F.R.D. at 220 (approving service awards ranging from $7,500 to $20,000); *Hamadou v. Hess Corp.*, No. 12 Civ. 0250, 2015 U.S. Dist. LEXIS 79777, at *10 (S.D.N.Y. June 18, 2015) (approving service awards totaling $33,000, or 4.77% of $691,350 settlement); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 U.S. Dist. LEXIS 11026, at *27 (S.D.N.Y. Jan. 29, 2014) (approving five service awards of $25,000 each from $1,050,000 settlement); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (awarding four service awards totaling $40,000, or 9.09% of $440,000 settlement). These modest awards are reasonable and equitable to the other Class Members, who are benefiting from the efforts of the Service Award Plaintiffs.

### ii. The Notice to Class Members Meets the Requirements of Rule 23

As set forth in the Court's February 7, 2024 Order, the Settlement Notice satisfies the requirements of Rule 23(c)(2)(B).

### B. Approval Of The Settlement Of The FLSA Claims Is Also Appropriate

Plaintiff seeks approval of the settlement of the FLSA wage and hour claims. FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation. 29 U.S.C. § 216(b). Because employees who do not opt-in to an FLSA action do not lose their right to file suit at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, and the high standard for approval of a class settlement does not apply

to an FLSA settlement. *See Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *18-19.

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Id.* at *19. The adversarial nature of an FLSA action is typically a sufficient indication of a settlement's fairness. *Id.* "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* The settlement in this case was the result of vigorously contested litigation and arm's-length negotiation. The settlement of the FLSA claims is thus fair and reasonable and should be approved.

### C.  The Claims Administrator's Fees Should Be Approved

Pursuant to the terms of the Settlement Agreement, the parties retained Rust Consulting, Inc. to administer the settlement. The Claims Administrator estimates that settlement administration costs will total $20,492. (Mills Decl. ¶ 18.) Thus, Plaintiff respectfully requests that the Court approve all of the Claims Administrator's reasonable fees to be paid from the settlement fund.

### D.  Class Counsel's Attorneys' Fees And Costs Should Be Approved

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.* Here, the Settlement Agreement authorizes Class Counsel to receive one-third of the Settlement Payment as attorneys' fees as well as reimbursement of costs.

24

Although there are two ways to compensate attorneys for successful prosecution of class actions (the lodestar method or the percentage of the recovery method), "[t]he trend in [the Second] Circuit is toward the percentage method, . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation marks omitted); *see also Bannerman*, 2020 U.S. Dist. LEXIS 12868, at *3 (noting that the percentage of recovery method is "consistent with the trend in this Circuit") (internal quotation marks omitted); *Raniere*, 310 F.R.D. at 220 (noting that "[c]ourts in the Second Circuit tend to grant class counsel a percentage of any settlement, rather than utilize the 'lodestar method'"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases).

### i.  Class Counsel's Requested Fee Award is Reasonable

Pursuant to the Settlement Agreement, Class Counsel seeks $500,000 from the settlement fund as attorneys' fees and $19,102.32 as costs. (*See* Schulman Decl. ¶ 72 for a breakdown of the costs for which Class Counsel seek reimbursement.)  This request for a fee of one-third of the settlement fund is consistent with both the retainer agreements Class Counsel entered into with the Named Plaintiff (Schulman Decl. ¶ 67) and the norms of class litigation in this Circuit.  *See, e.g., Park*, 2021 U.S. Dist. LEXIS 12819, at *3-4; *Bannerman*, 2020 U.S. Dist. LEXIS 12868, at *3-4; *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ("A fee award of one-third of the Settlement Fund 'is well within the range accepted by courts in this circuit.'"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (awarding fees of one-third of $42,000,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding fees of 33% of $9,250,000 settlement); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist.

LEXIS 22663, at *76 (S.D.N.Y. Nov. 26, 2002) ("In this district alone, there are scores of common fund cases where fees alone (*i.e.*, where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund.").

### a. Goldberger factors

In determining whether a fee is reasonable, courts consider "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

### 1. Counsel's time and labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement. This case settled near the end of the discovery period. The time invested in managing the opt-in process, engaging in discovery, meeting with the Named Plaintiff and Opt-In Plaintiffs, briefing upcoming motions, engaging in settlement discussions, and managing the settlement notice phase was a reasonable expenditure of Class Counsel's time. *See, e.g., Maley*, 186 F. Supp. 2d at 371-372.

Plaintiff took complete fact discovery from Defendants, which Class Counsel used to evaluate the claims and calculate damages. (Schulman Decl. ¶¶ 24-26.) Class Counsel spent substantial time responding to Defendants' discovery requests and handling discovery disputes. Class Counsel engaged in mediation and spent significant time following the mediation to negotiate and finalize the formal settlement agreement and coordinate the administration of the settlement. This included spending hours reviewing the Class data provided by Defendants to identify missing Class Members and other data issues. (Schulman Decl. ¶¶ 63-64.) Moreover,

through regular contact with the Service Award Plaintiffs, Class Counsel kept them informed of and involved in the action. *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that Class Counsel "spent time communicating with members of the Class").

Class Counsel invested over $252,912.50 worth of time – including over 477.2 attorney hours and 117.7 paralegal/administrative assistant hours – in litigating and obtaining a fair settlement for the Class. (Schulman Decl. ¶ 66; Ex. 11.) In addition to reimbursement of costs, Class Counsel now seeks a fee of $500,000, or a lodestar multiplier of 1.98. When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007). The multiplier of 1.98 in this case is well within the range of multipliers approved in this Circuit. *E.g.*, *D'Angelo*, 2023 U.S. Dist. LEXIS 131029, at *29-30 (2.07 multiplier); *Nichols v. Noom, Inc.*, No. 20 CV 3677, 2022 U.S. Dist. LEXIS 123146, at *33 (S.D.N.Y. July 12, 2022) (approving 2.88 multiplier and stating that it "is fully consistent with that found to be reasonable [in] other cases in this Circuit"); *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 CV 3203, 2018 U.S. Dist. LEXIS 170192, at *16-17 (E.D.N.Y. Sept. 28, 2018) (approving 2.3 multiplier and noting that "'[c]ourts regularly award lodestar multipliers from two to six times lodestar'"); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 CV 4216, 2014 U.S. Dist. LEXIS 105596, at *43 (S.D.N.Y. July 31, 2014) (2.98 multiplier); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (6.3 multiplier). Accordingly, Class Counsel's time and labor weighs in favor of approving the requested fee.

### 2.  The litigation's magnitude and complexity and the risks of litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *30 (internal quotation omitted); *see also In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees.").  Class Counsel took this case pursuant to a retainer agreement with the named Plaintiff that stated that Counsel would receive a percentage of the recovery *only if* Plaintiff obtained a recovery.  As discussed *supra*, this was a complex litigation, and Plaintiff faced significant risks in establishing liability and damages.  Thus, Class Counsel risked receiving little or no payment for their work. (Schulman Decl. ¶¶ 67-68.)

### 3.  Quality of the representation

Class Counsel have extensive experience representing employees – and particularly restaurant employees – in wage-hour class and collective actions, as outlined in the Schulman Declaration ¶¶ 60-62.  *E.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008 (RJS), at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (Ex. 7); *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) (affirming district court's certification of Rule 23 class of restaurant servers with JK as class counsel); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) (certifying class and appointing JK co-class counsel); *Pefanis v. Westway Diner, Inc.*, No. 08 CV 002, 2010 U.S. Dist. LEXIS 93180 (S.D.N.Y. Sept. 7, 2010) (denying restaurant's motion for decertification of Rule 23 class and § 216(b) collective); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) (conditionally

certifying FLSA collective). Class Counsel used their experience to obtain an excellent result for the class. *See In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class."). No Class Members objected to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court." *Maley*, F. Supp. 2d at 374.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work." *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted). At the time of settlement, Defendants were represented in this action by experienced litigators with Epstein Becker & Green, P.C.

### 4. The fee is reasonable in relation to the settlement

In the Second Circuit, it is well settled that a fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit[,]" particularly in wage and hour class settlements. *Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (wage and hour settlement); *see also, e.g.*, *D'Angelo*, 2023 U.S. Dist. LEXIS 131029, at *26; *Delijanin*, 2021 U.S. Dist. LEXIS 27462, at *20; *Bannerman*, 2020 U.S. Dist. LEXIS 12868; *Jara v. Felidia Rest.*, No. 17 CV 9622, 2018 U.S. Dist. LEXIS 241262, at *6 (S.D.N.Y. Dec. 17, 2018); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *12-13 (S.D.N.Y. May 11, 2015); *Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *43; *see also Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026 , at *24 (S.D.N.Y. Oct. 28, 2011) (noting that "[i]n class settlement funds like this one, a one-third award of the settlement proceeds is considered typical and reasonable").

Class Counsel seek a $500,000 fee, or one-third of the settlement fund. While this percentage could constitute a "windfall" in cases involving larger settlement funds, the requested fee of $500,000 "does not create such an issue." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15,175,000 settlement); *see also Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *38 ($1,949,000 settlement). This this factor weighs strongly in favor of approving the requested fee.

### 5. Public policy considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a); N.Y. Lab. Law § 650. A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks v. Morgan Stanley & Co., Inc.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *26 (S.D.N.Y. Oct. 24, 2005). Moreover, given the relatively small recoveries of individual Class Members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations." *Frank*, 228 F.R.D. at 181. Indeed, "[w]here relatively small claims can only be prosecuted through aggregate litigation, and law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, at *25-26 (S.D.N.Y. Oct. 2, 2013). In light of the foregoing, Class Counsel's requested attorneys' fees are reasonable under the *Goldberger* factors and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to (1) grant final approval of the Settlement Agreement; (2) award Class Counsel attorneys' fees and costs; (3) approve the requested service awards; and (4) award the Claims Administrator its reasonable fees towards

administering the settlement.

Dated: New York, New York
       June 11, 2024

By:    /s/ Denise A. Schulman
       D. Maimon Kirschenbaum
       Denise A. Schulman
       Josef Nussbaum
       JOSEPH & KIRSCHENBAUM LLP
       32 Broadway, Suite 601
       New York, NY 10004
       212-688-5640

       *Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*