**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**DAVID FEYDER REUVENI on behalf of himself and others similarly situated,**

       **Plaintiff,**

       v.

**UNAPOLOGETIC FOODS, LLC, ESSEX HOSPITALITY, LLC, d/b/a DHAMAKA RESTAURANT, MASALAWALAPS, LLC, d/b/a MASALAWALA RESTAURANT, THOMSON HOSPITALITY LLC d/b/a ADDA INDIAN CANTEEN, TAPESTRY MANAGEMENT, LLC d/b/a SEMMA SOUTHER INDIAN, THE MASALAWALA LLC, DEBABRATA RONI MAZUMDAR and CHINTAN PANDYA,**

       **Defendants.**
-------------------------------------------------------x

**CASE NO. 22 CV 10930 (JMF)**

### DECLARATION OF DENISE A. SCHULMAN

I, Denise A. Schulman, under penalty of perjury, affirm as follows:

1. I am a partner with Joseph & Kirschenbaum LLP ("JK"), Plaintiffs' counsel in this action. I submit this declaration in support of Plaintiff's motion for final approval of a class action settlement. I am familiar with the facts and circumstances set forth herein.

### EXHIBITS

2. Attached hereto as **Exhibit 1** is a true and correct copy of the parties' executed settlement agreement.

3. Attached hereto as **Exhibit 2** is a true and correct copy of a proposed final approval order.

1

4. Attached hereto as **Exhibit 3** is a true and correct copy of the January 29, 2021 order in *Argudo v. Parea Group LLC*, No. 18 CV 678 (S.D.N.Y.).

5. Attached hereto as **Exhibit 4** is a true and correct copy of the September 14, 2012 hearing transcript from *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240 (S.D.N.Y.).

I declare under penalty of perjury that the foregoing is true and correct.

6. Attached hereto as **Exhibit 5** is a true and correct copy of Google search results for "David Feyder Reuveni" on June 3, 2024.

7. Attached hereto as **Exhibit 6** is a true and correct copy of Google search results for "Isaac Aaron Estevez" on June 3, 2024.

8. Attached hereto as **Exhibit 7** is a true and correct copy of the December 22, 2015 hearing transcript from *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008 (S.D.N.Y.).

9. Attached hereto as **Exhibit 8** is a true and correct copy of the June 15, 2022 hearing transcript in *Zivkovic v. Laura Christy LLC*, No. 17 Civ. 553 (S.D.N.Y.).

10. Attached hereto as **Exhibit 9** is a true and correct copy of the April 12, 2023 report and recommendation, Dkt. No. 88, from *Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518 (S.D.N.Y.).

11. Attached hereto as **Exhibit 10** is a true and correct copy of the April 28, 2023 order adopting in relevant part the report and recommendation attached as Exhibit 9.

12. Attached hereto as **Exhibit 11** is a true and correct copy of JK's contemporaneous time records for this litigation.

## NATURE OF THE CLAIMS, PROCEDURAL HISTORY, DISCOVERY, AND SETTLEMENT NEGOTIATIONS

13. Defendants own(ed) and/or operate(d) a number of Indian restaurants in New York City. As is relevant to this action, Essex Hospitality, LLC operates Dhamaka, MasalawalaPS, LLC operates Masalawala & Sons, Thomson Hospitality LLC operates Adda Indian Canteen, Tapestry Management, LLC operated Rahi restaurant and currently operates Semma Southern Indian, and The Masalawala LLC operated The Masalawala (together with Dhamala, Masalawala & Sons, Adda Indian Canteen, Tapestry, Rahi, and Semma Southern Indian, the "Restaurants"). At all relevant times, Defendant Debabrata Roni Mazumdar has been an owner of all of the LLC Defendants in this action.

14. Named Plaintiff David Feyder Reuveni worked at Dhamaka and Masalawala & Sons as a server.

15. On December 28, 2022, Reuveni commenced this action on behalf of himself and a putative class of similarly situated service employees, alleging that Defendants (1) did not pay service employees the New York minimum wage for all hours worked, in violation of N.Y. Lab. L. § 652; (2) did not pay service employees the correct overtime rate for overtime hours worked, in violation of the FLSA and New York law; (3) required service employees to share tips with tip ineligible managers, in violation of N.Y. Lab. L. § 196-d; and (4) did not provide service employees with the wage statements and wage notices required under N.Y. Lab. L. § 195.

16. On January 10, 2023, Isaac Aaron Estevez, who worked as a bartender at Defendants' Rahi, Semma Southern Indian, and Masalawala & Sons restaurants, joined this action as an Opt-In Plaintiff.

17. Plaintiff filed amended complaints on February 7 and June 16, 2023, the latter of which added The Masalawala LLC as a Defendant.

18. Pursuant to stipulation, on July 13, 2023 Plaintiff's counsel sent notice of the FLSA claims in this case was to all tipped employees who worked at five of Defendants' restaurants – Adda Indian Canteen, Dhamaka, Masalawala & Sons, Rahi, and Semma Southern Indian – on or after December 28, 2019.  In addition to the Named Plaintiff and Estevez, 11 individuals joined the action as Opt-In Plaintiffs in response to that notice.  The Opt-In Plaintiffs included people who worked at Rahi, Semma, Dhamaka, and Masalawala & Sons.

19. Plaintiff's minimum wage claim is based on Defendants' use of the tip credit to pay service employees.  Plaintiff alleges that Defendants were not entitled to use the tip credit because Defendants (1) did not provide written notice of the tip credit to employees and (2) required service employees to spend at least two hours or 20% of their shifts performing non-tipped work such as cleaning, setting tables, polishing silverware and glassware, rolling napkins, and other sidework.

20. Plaintiff contends that even if Defendants were entitled to use the tip credit, they did not pay service employees the proper overtime rate until approximately December 2022.  The tip credit overtime rate is calculated by multiplying the full minimum wage by 1.5 and then subtracting the tip credit.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.  Thus, for an employee paid a $10 tip credit rate when the full minimum wage was $15, the tip credit overtime rate was $17.50 ($15 * 1.5 = $22.50 - $5 tip credit = $17.50).  However, until approximately December 2022, Defendants paid Class Members an overtime rate of 1.5

times the tip credit minimum wage. For example, an employee paid a $10 tip credit rate was paid an overtime rate of $15 rather than $17.50.

21. In addition, although some service employees worked at more than one restaurant, Defendants did not aggregate their hours across restaurants for the purpose of calculating overtime hours. Plaintiff maintains that the Restaurants constitute a single integrated employer, and therefore Defendants were obligated to aggregate hours for overtime purposes.

22. Plaintiff also contends that the tip pools at Dhamaka, Rahi, and Semma Southern Indian restaurant violated N.Y. Lab. L. § 196-d because they included managers who had, *inter alia*, hiring, firing, and scheduling authority.

23. Finally, Plaintiff alleges that Defendants (1) either failed entirely to provide the wage notices required under N.Y. Lab. L. § 195(1) or provided deficient notices; and (2) violated N.Y. Lab. L. § 195(3) by failing to accurately identify the tip credit taken on employees wage statements.

24. The parties engaged in substantial discovery prior to reaching a settlement. Following extensive discovery disputes and pursuant to Court Order, Defendants produced all putative Class Members' time records, payroll records, wage notices, wage statements, and tip sheets in their possession. There were variations among the restaurants as to if and when they provided wage notices to Class Members and the types of wage notices they provided.

25. Class counsel used Defendants' production to evaluate the claims and calculate damages.

26. Plaintiff took four depositions, which included Fed. R. Civ. P. 30(b)(6) depositions of each Corporate Defendant and depositions of the two Individual Defendants.

27. The Named Plaintiff and the 11 Opt-In Plaintiffs on whom Defendants served written discovery requests – Zachary Abercrombie, Lupe Alexandra Avila, Jonathan Castro, Aawa Ebret, Isaac Estevez, Jaime Figueroa, Jacqueline Gil, Kumar Ganapathy, Artemio Lopez, Alaska Stewart, and Sydney Williams (collectively, the "Discovery Plaintiffs") – also responded to Defendants' written discovery requests and, if applicable produced responsive documents. Defendants did not serve discovery requests on the twelfth Opt-In Plaintiff, Jonathan Gil Escobar.

28. On January 22, 2024 the parties attended a private mediation with mediator Martin Scheinman.

29. At the mediation, the parties agreed to settle this case for $1,500,000.00.

## FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

30. Plaintiff and JK believe this settlement amount is highly favorable to the Class in light of their risks in this litigation.

31. The settlement amount exceeds the maximum amount of Class Members' unpaid minimum wage compensation, which is the largest single claim in this case.

32. The Class Members' maximum possible recovery is approximately $5.35 million. Out of this, penalties for violations of N.Y. Lab. L. § 195(1) and (3) account for roughly $772,300 and $1.007 million, respectively, and liquidated damages total approximately $1.784 million. Class Members' maximum out of pocket loss – including compensatory damages for the unpaid tip credit, unpaid overtime premium, and misappropriated tips – totals roughly $1.784 million, approximately $1.409 million of which is unpaid tip credit damages.

33. Under the settlement agreement, the Net Settlement Fund is split into three separate pools – separate tip disgorgement funds for Rahi/Semma and Dhamaka, and the remainder. The percentages allocated to the two tip disgorgement funds correspond to the share of the total Classwide damages (compensatory and liquidated damages) attributed to the N.Y. Lab. L. § 196-d claims for the respective restaurants.

34. Absent a settlement, the Class faces substantial risks in obtaining their maximum possible recovery. For example, there are factual disputes concerning the duties of the people Plaintiff contends were improperly included in the Dhamaka, Rahi, and Semma tip pools. In addition, while Plaintiff contends that no Class Members received adequate notice of the tip credit, some wage and other notices were provided to some Class Members, and the parties dispute whether any of those notices were sufficient.

35. If litigation continued, Defendants would also likely challenge Plaintiff's N.Y. Lab. L. § 195 claims on standing grounds.

36. Defendants have represented that paying a settlement of this side is a financial hardship, as reflected in the 25-month payment period. The Restaurants are also small, with 20 or fewer tables each, and The Masalawala closed in 2021.

37. As this is not a claims made settlement, Plaintiff and Class Counsel did not enter into the settlement with the expectation that a large portion of Class Members would not case the settlement checks mailed to them.

38. During the notice period, a number of Class Members who did not receive notice contacted Class Counsel to update their addresses, indicating a "word of mouth" effect about the settlement that will help to locate Class Members who may have moved.

39. Defendants have also provided Class Counsel with the phone numbers of the vast majority of Class Members, which will enable Class Counsel to conduct outreach to Class Members who do not cash their checks.

## SERVICE AWARDS

40. Reuveni initiated this action, remained in regular communication with Class Counsel throughout the litigation, and brought Estevez into the case shortly after it began.

41. Estevez worked at two restaurants – Rahi and Semma – where Reuveni did not and provided specific information about those restaurants that Plaintiff included in the First Amended Complaint, including identifying alleged managers who were included in the Rahi and Semma tip pools. Thus, Estevez was responsible for the assertion of N.Y. Lab. L. § 196-d claims on behalf of Rahi and Semma employees. Estevez also agreed to become a Named Plaintiff if needed when Plaintiff submitted a proposed Third Amended Complaint in response to Defendants' motion for judgment on the pleadings.

42. Reuveni and Estevez were both prepared to sign declarations in support of an FLSA conditional certification motion when it seemed unlikely that the parties would be able to stipulate to notice.

43. Reuveni and the Discovery Plaintiffs expended significant time providing documents and critical facts to counsel and participating in discovery. They all completed paper discovery, meeting with me to do so, and produced responsive documents if they had any.

44. Reuveni and Opt-In Plaintiffs Abercrombie, Estevez, Gil, and Williams also spoke with me in anticipation of providing declarations for the class certification motion that, prior to reaching a settlement, was due on February 1, 2024.

45. Opt-In Plaintiff Abercrombie joined this action while he was still employed by Defendants.

46. This lawsuit is the first and fourth Google search result for David Feyder Reuveni and Isaac Aaron Estevez, respectively, which may harm them in future job searches.

47. During the FLSA opt-in period, at least two people expressed to me that they were afraid of the consequences of joining the action, and they ultimately decided not to opt-in.

## ATTORNEYS' FEES AND COSTS

48. JK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters.

49. D. Maimon Kirschenbaum manages the firm.

50. Since graduating from Fordham University School of Law in 2005, Mr. Kirschenbaum has worked at JK. As a result of his accomplishments, he became member/partner of the firm in May of 2007.

51. I received my J.D. from New York University School of Law in 2008 and joined JK in January 2009. I was an associate until February 2017, when I became a partner.

52. Throughout my tenure at JK, I have almost exclusively represented employees with wage and hour and discrimination/retaliation claims, on both an individual and class basis.

53. Josef Nussbaum graduated from McGill University's Faculty of Law in 2009 and joined JK in 2011. He became a partner in 2020.

54. The majority of Mr. Nussbaum's personal current docket consists of class and collective action lawsuits against New York employers for wage and hour violations.

55. Ileana Gomez Albuquerque was a paralegal at JK from approximately February 2022 to January 2023. She had approximately five years of paralegal experience before joining JK, and she was a JD student at Elisabeth Haub School of Law at Pace University while employed by JK.

56. Evelyn Velesaca joined JK as an administrative assistant in February 2022 and became a paralegal at the firm in January 2023. She received her B.A. from Hunter College in 2022. Before joining JK, Ms. Velesaca interned at Kramer Levin Naftalis & Frankel, the New York City Department of Social Services, and Volunteers of Legal Service.

57. Jorge Aguirre was an administrative assistant at JK from approximately February 2023 to November 2023. Before joining JK, Mr. Aguirre had over four years of experience working for the Maricopa County Superior Court, including as a judicial clerk, courtroom bailiff, and judicial assistant.

58. Mariela Lini has been a paralegal at JK since January 2024. She received her B.A. from John Jay College of Criminal Justice in 2019. Before joining JK, she had nearly five years of experience as a legal assistant/paralegal.

59. Andy Pichardo has been an administrative assistant at JK since December 2023. He received his BA from The City College of New York in June 2023.

60. Mr. Kirschenbaum, Mr. Nussbaum, JK, and I have been approved numerous times as lead or co-lead class counsel (or counsel for representative plaintiffs in FLSA collective actions) in wage and hour actions in federal and state courts. *E.g.*, *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011); *Martinenko v. 212 Steakhouse Inc.*, No. 22 CV 518, 2023 U.S. Dist. LEXIS 73982 (S.D.N.Y. Apr. 27, 2023); *Lomeli v. Falkirk Mgmt. Corp.*, Index No. 1580-2016 (N.Y. Sup. Ct. Orange County Oct. 22, 2021); *Argudo v. Parea Grp. LLC,* No. 18 CV 0678, U.S. Dist. LEXIS 163249 at *17 (S.D.N.Y. Sept. 24, 2019) (Furman, J.); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015); *Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910 (S.D.N.Y.

Jan. 13, 2014); *Schear v. Food Scope Am, Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014); *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011); *Spicer v. Pier Sixty LLC*, 2010 U.S. Dist. LEXIS 76782 (S.D.N.Y. July 26, 2010); *Kato v. Masa NY*, Index No. 09-104578 (S. Ct., N.Y. County Jan. 28, 2010); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective action); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007).

61. Several of these cases have changed the landscape of wage and hour class and collective litigation in general, and such litigation in the food service industry specifically. *See*, *e.g.*, *Shahriar*, 659 F.3d 234 (affirming class certification and holding that in FLSA actions pursued on a collective basis under 29 U.S.C. § 216(b), courts may exercise supplemental jurisdiction over state law claims pursued on a class basis under Fed. R. Civ. P. 23); *Spicer*, 249 F.R.D. 321 (holding that the New York Court of Appeals' decision in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), finding that mandatory charges can be gratuities applies retroactively and issuing first denial of a defendant's summary judgment motion on *World Yacht* claim).

62. As a result of these lawsuits, we have recovered over $100 million for thousands of workers. *E.g.*, *Gordon v. Bluetriton Brands, Inc.*, No. 616877/2022 (N.Y. Sup. Ct. Nassau County Oct. 24, 2023) (granting final approval of $8.4 million settlement); *Capsolas*, 2012 U.S. Dist. LEXIS 144651 (granting final approval of $5,250,000 settlement); *Spicer v. Pier*

*Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) (granting final approval of $8.5 million settlement); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) (granting final approval of $4,750,000 settlement); *Alderman v. 21 Club Inc.*, No. 09 Civ. 2418 (S.D.N.Y. Jan. 27, 2012) (granting final approval of $2,000,000 settlement); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (granting final approval of $1,975,000 settlement); *Braunstein v. Hudson Hall LLC*, No. 19 Civ. 7983 (S.D.N.Y. May 14, 2021) (approving $950,000 settlement); *Ahad v. BLT Steak LLC*, No. 08 Civ. 5528 (S.D.N.Y. Aug. 13, 2010) (approving $925,000 settlement); *Brinker v. Planet Hollywood N.Y., L.P.*, No. 08 Civ. 443, 2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. Aug. 13, 2009) (granting final approval of $900,000 settlement); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of $2,500,000 settlement).

63. We will expend more hours after the date of this motion in appearing at the Fairness Hearing and monitoring the administration of the Settlement. Class Counsel have already expended significant time communicating with Class Members about the settlement and will continue to do so as the settlement administration continues.

64. In addition, Class Counsel spent hours reviewing the Class data provided by Defendants to identify missing Class Members and other data issues to ensure that all Class Members were included in the settlement.

65. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case.

66. Below is a chart summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total paralegal time for time spent by JK on this matter. These rates have been approved by courts in this District. (*See* Ex. 8 at 17:9-24; Ex. 9 at 32-33; Ex. 10 at 4.) Travel time (0.9 hours for Mr. Kirschenbaum and 0.7 for me) has been billed at a half rate.

| Individual | Rate | Total Hours | Total |
|---|---|---|---|
| D. Maimon Kirschenbaum | $500 | 22.3 | $10,925 |
| Denise A. Schulman | $500 | 371.8 | $185,725 |
| Josef Nussbaum | $500 | 83.1 | $41,550 |
| Paralegals/administrative assistants | $125 | 117.7 | $14,712.50 |
| | | **Total:** | **$252,912.50** |

67. Class Counsel took this case pursuant to a retainer agreement with Plaintiff that stated Counsel would receive up to one-third of the recovery *only if* Plaintiff obtained a recovery.

68. Class Counsel undertook to prosecute this action without an assurance of payment for their services, litigating this case on a wholly contingent basis in the face of substantial risk. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Attorneys undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. Class Counsel stood to gain nothing in the event the case was unsuccessful.

69. JK undertook the responsibility to fund the costs of this case and to litigate through trial if necessary, and possibly appeals if relevant. Our activities included, but were not limited to: interviewing and remaining in regular contact with Plaintiff; reviewing hundreds of documents produced by Defendants; preparing damage calculations; negotiating the settlement; drafting the settlement agreement; drafting motions for preliminary and final approval of the settlement; monitoring the administration of the settlement; and communicating with Class Members. After the fairness hearing, we will continue to oversee the administration of the settlement and respond to Class Member inquiries.

70. To date, Class Counsel have worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

71. No Class Member has raised objections to the attorneys' fees as set forth in the Notice of Settlement.

72. Class Counsel incurred the following costs in litigating this case:

| **Description of cost** | **Total costs** |
|---|---|
| Filing fee | $402 |
| Service of process | $1,134 |
| Postage and delivery services | $169.35 |
| Depositions | $9,831.98 |
| Mediation | $7,500 |
| Computer program to download text messages for discovery production | $64.99 |
| **Total:** | **$19,102.32** |

Dated: New York, New York        /s/ Denise A. Schulman
       June 11, 2024              Denise A. Schulman

14